1  Andre L. Verdun (SBN 265436)
2  Attorney at Law
   1777 N Ventura Ave
3  Ventura, CA 93001
4  Tel.: (619) 880-0110
   Fax: (866) 786-6993
5  Andre@VerdunLaw.com
6
7  Attorneys for the Plaintiff,
   Jessie Verdun
8

9  **UNITED STATES DISTRICT COURT**

10  **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

11

12  **JESSIE VERDUN**,                    ) Case No.:

13              Plaintiff,                ) **COMPLAINT**

14          v.                           )

15                                       ) **DEMAND FOR JURY TRIAL**

16  **BANK OF AMERICA, N.A.** and        )
    **DOES 1-10**,                       )
17              Defendants.              )
18                                       )
19                                       )
20  

21
22
23
24
25
26
27
28

-1-
**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

**INTRODUCTION**

1.    According to the FBI, Identity Theft is the fastest growing crime in the United States.   In June 2020, Jessie Verdun became one of the millions of Americans to become a victim of identity theft.

2.    In 2020, as a result of the COVID-19 pandemic, Mr. Verdun became eligible for pandemic assistance income, and began receiving unemployment benefits from the State of California, which were directly loaded onto Mr. Verdun's Bank of America debit card.

3.    That the unemployment benefits were loaded on a Bank of America debit card account was the result of an exclusive arrangement between the California Employment Development Department ("EDD") and Bank of America for the distribution of unemployment benefits to California residents.

4.    In June 2020, Mr. Verdun learned that his unemployment benefits were stolen from his debit card account.  On the day he discovered the theft, Mr. Verdun notified Bank of America told Bank of America about the theft. He told Bank of America that the transaction was fraudulent. The only solution offered by Bank of America was to place a freeze on his account.

5.    On or about August 24 and September 22, Mr. Verdun mailed proof of the theft to Bank of America.  In response, Bank of America did not contact Mr. Verdun to discuss the issue further and it refused to return his money.

6.    Numerous other California consumers have complained to Bank of America of similar fraud regarding their unemployment benefit debit card accounts. Cases include *Yick v. Bank of America*, 3:21-cv-00376 (U.S.D.C. N.D. Cal. 2021), *Wiggins v. Bank of America, N.A.*, 2:21-cv-00319 (U.S.D.C. E.D. 2021), *Rodriguez v. Bank of America*, N.A. 3:21-cv-00494, and *Mosson v. Bank of America, N.A.* (3:21-cv-00743), among others.

7.    And the news has been flooded with reports of EDD hacks of Bank of America accounts almost instantly after pandemic related benefits started being

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

issued,[1] and countless people have reported they are the victim of fraud even though they never used their debit cards.

8.    Numerous individuals in California report calling Bank of America and never being able to reach anyone that could assist them.

9.    In an article printed by CalMatters.org, Stephanie Moore of Los Angeles said in an interview: "It's kind of like a nightmare . . .  Every day I'm wondering what's more important. Do I get on the phone with the bank and try again so I have a place to sleep tomorrow, or do I just accept that I'm going to be on the street and focus on my job search? Because you can't do both."

10.  A Bank of America employee also told CalMatters.org "We're actually no longer allowed to tell them a timeframe, because we have no clue…Every day, I talk to 30 people with the same story. I just pray for them after my shift, honestly."[2]

11. For instance, Tatiana Solorzano, a single mother, received her unemployment benefits through a Bank of America debit card. One day, she noticed a strange transaction on her account from another bank showing just

---

[1] KPIX–CBS SF Bay Area story "Victims of Bank of America EDD Debit Card Fraud Tell Stories of Fake Charges, Long Waits, Closed Claims," (Dec. 22, 2020), *available at* https:// sanfrancisco.cbslocal.com/2020/12/22/victims-of-bank-of-america-edd-debit-card-fraud-tell-stories-of-closed-claims-frustration-loss/.

LA Times "California unemployment fraud totals over $11 billion - Los Angeles Times", *available at*, https://www.latimes.com/california/story/2021-01-25/california-unemployment-fraud-11-billion-investigations

CalMatters, "How Bank of America Helped Fuel California's Unemployment Meltdown," (Nov. 20, 2020), *available at* https://calmatters.org /economy/2020/11/how-bank-of-america-helped-fuel-californias-unemployment-meltdown/.

[2] CalMatters, "How Bank of America Helped Fuel California's Unemployment Meltdown," (Nov. 20, 2020), *available at* https://calmatters.org /economy/2020/11/how-bank-of-america-helped-fuel-californias-unemployment-meltdown/.

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

zeros. It happened the second day, then again, the third day. On the third day, a fraudulent transaction removed $1,003 from her account.

12.   Brandon Birkhofer reported that he "went to the bank to withdraw money from my EDD account and it said I had reached my daily limit." He learned later that fraudsters pulled money out of his account five days in a row – he's out $5,000.

13.   Gail Goertzen lost $4,000 from an ATM at Bank of America where a fraudster withdrew $1,000 four days in a row.

14.   A victim known simply as Heather had money from her Bank of America EDD debit card drained in Las Vegas.  After learning of the fraud, she "was on the phone for seven-and-a-half hours, disconnected every time. You get to the point where you are just exhausted."

15.   Martha Galvan, an EDD benefit recipient, noticed an unusual $53 dollar charge on her EDD debit card from Doordash in October. The delivery was in San Francisco and Galvan lives in Southern California.

16.   Gary Stoefen also had two fraudulent charges from DoorDash and the numerous other charges from all over the country, which he did not make, charged to his Bank of America EDD debit card. Stoefen said in a media interview, "The important thing is, I never have used the card. I only used the account number to transfer money to my credit union."  "I can't seem to get a dime back from Bank of America. They have not been helpful whatsoever, and it takes about two hours to get through to them," said Stoefen.

17.   EDD benefit recipient Rob Thurber recalls that after being victimized by fraudulent transactions on his Bank of America issued EDD debit card that, "I went to pull out a thousand, and it said 'insufficient funds,'" and that after it called Bank of America to report the fraud, "I waited on hold for seven hours." Two days later, Thurber received a letter from Bank of America in the mail telling him his claim was closed, identical to dozens of others. Thurber appealed. But a month-and-a-half later, he was still waiting. "It's extremely frustrating. It really feels like they don't

-4-

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

care," said Thurber. "It makes me sad because I am already struggling with the fact that I am not providing the way that I want to provide for my family," said Thurber.

18.  As a result of Bank of America's unlawful acts and omissions, Mr. Verdun suffered actual damages in the form of serious and severe physical and emotional injury, emotional distress, including nervousness, stress, headaches, embarrassment, humiliation, anger, loss of concentration at work and home, fear, hopelessness, sleep problems, gastrointestinal problems, frustration, anxiety, depression, irritation, and loss of enjoyment of life, among other negative emotions.

## JURISDICTION AND VENUE

19.  Defendants are authorized to do business and do conduct business in California.

20.  Jurisdiction of this Court arises under 28 U.S.C. § 1337, and supplemental jurisdiction exists for any state law claims pursuant to 28 U.S.C. § 1367.

21.  Venue is proper in that Defendants transact business here and the conduct complained of occurred here.

## PARTIES

22.  JESSIE VERDUN ("Mr. Verdun" or "Plaintiff") is and at all times herein mentioned was a natural person that resided in the City of Santa Paula, in the County of Ventura, in the United States of America.

23.  BANK OF AMERICA, N.A. ("Defendant" or "Bank of America") is and at all times herein mentioned was, a bank organized under the laws of the United States and conducted business in the State of California.

24. All acts of the Defendants' employees as hereafter alleged were authorized or ratified by the owner or managing agents of Bank of America.

/ / /

## COMPLAINT FOR DAMAGES

*Verdun v. Bank of America*

25. The true names and capacities, whether individual, corporate, associate, or otherwise, of defendants DOES 1-10 inclusive, are unknown to Plaintiff, who therefore sues said defendants by such fictitious names. Plaintiff will amend this complaint to show their true names and capacities once ascertained. Plaintiff is informed and believe, and thereon allege that each of said Defendants are responsible in some manner for the events and happenings, and proximately caused the injuries and damages hereafter alleged.

## FACTUAL ALLEGATIONS

### Bank of America's Contract with EDD

26. The California Employment Development Department ("EDD") is a branch of the California government that distributes benefits payment to California residents for different types of state services, such as unemployment insurance benefits, among others.

27. In 2010, Bank of America entered into an exclusive arrangement with California EDD to issue debit cards from which people entitled to EDD benefits could access their money, substituting paper checks for the delivery of EDD benefits. A factor that EDD considered when choosing to contract with Bank of America was Defendant's promise of quality fraud monitoring for EDD.

28. In 2015, Bank of America stated in its proposal to renew its contract with the EDD that it "fully intend[s] to apply the most rigorous fraud detection procedures," including "employ[ing] the highest level of security and fraud safeguards" based on "multiple layers of extensive security" and a "multi-faceted approach to combat fraud." The proposal specifically promises that Bank of America would provide "fraud monitoring" for all EDD cards and accounts, and to employ technology that Bank of America stated would provide "immediate response to emerging fraud trends" and allow fraudulent transactions to be "declined in real time."

/ / /

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

29.  Bank of America debit cards use only a magnetic strip to transmit information, which is a method that allows for information to be captured easily by fraudsters. That is because these card stripes are "static" in that same information being transmitted with each use of the card. Therefore, if the information on the magnetic strip can be captured, it can be used to future fraudulent use.

30.  In an effort to combat consumer fraud enabled by magnetic strips, the financial industry began using an EMV chip innovation as the business standard. EMV chips are "dynamic," which means the information they contain can be collaborated with, modified, and refreshed. An EMV chip makes a new electronic mark for every exchange, making information from past EMV chip card buys pointless to would-be criminals, decreasing the danger of fake, unapproved transactions.

31.  In 2014, Bank of America began using chip technology on all new consumer debit cards issued after that time. Bank of America said, "chip technology is an important tool in increasing card security, and we want our customers to have the best possible experience when using their payment cards." The executive added that the "new chip-enabled cards will improve security of customers' transactions."

32.  However, when Bank of America issued EDD debit cards, it chose to use the magnetic stripe only, and did not use the EMV technology.

33.  This conduct did not comport with Bank of America's promise to safeguard the EDD accounts:

**"Zero Liability" and "24/7" Customer Service**

34.  Bank of America promises that EDD benefits holders that are subject to fraud will not be responsible for unauthorized transactions. Bank of America's FAQs section on their website concerning EDD cards, Bank of America states: "Am I responsible for transactions that I did not make?" then answers the question by stating: "Zero Liability" policy "protects you against fraudulent transactions."

-7-
**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

**Mr. Verdun is a victimiz of identity theft**

35. Jessie Verdun is a victim of identity theft.

36. On or about June 6, 2020, Jessie Verdun attempted to purchase food using his Bank of America EDD debit card, but the purchase was declined.

37. After his purchase was declined, Jessie Verdun went home and accessed this Bank of America EDD website, but he was locked out.

38. On June 6, 2020, minutes after learning he could not access his online account, Jessie Verdun called Bank of America and was told by the person answering the phone that $4,100 was missing from his EDD account.

39. During the June 6, 2020 call, the Bank of America representative told Jessie Verdun that Mr. Verdun had previously called Bank of America and requested that $4,100 to be transferred to his savings account. Jessie Verdun told Bank of America that he never called Bank of America to make any such request.

40. Bank of America responded that its notes on the account stated that someone called in, attempted the transfer money from Mr. Verdun's account, but did not have the information to confirm the account belonged to Mr. Verdun. The person pretending to be Mr. Verdun then called back, verified the account, and requested a transfer of money from the account.

41. Mr. Verdun informed Bank of America that the caller was not him. He further asked Bank of America why it would transfer the money when the caller could not verify the account on the first call.

42. In response, Bank of America indicated it would only freeze the account, but could not process any type of fraud claim. The operator stated that Plaintiff would have to call the claims department Monday to make a claim.

43. On or about June 8, 2020, Mr. Verdun called Bank of America in order to make a claim in order to has his money returned to his account. After waiting on hold for 8 hours, he was able to provide Bank of America with information relating to the fraud. However, all Bank of America would do was close his account and

-8-

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

1  open a new one.

2      44.  In order to have his EDD card reissued, Bank of America required that

3  Mr. Verdun call a different number.  Mr. Verdun called this number, and after

4  waiting hours on hold, he was able to request the replacement card.

5      45.  And then, in order to actually lodge a fraud claim with Bank of America

6  that it would investigate, he had to call a third number.  Mr. Verdun called this

7  number, and despite being on hold for more than 8 hours, Bank of America never

8  accepted his call.

9      46.  On June 8, 2020, Jessie Verdun called back and waited on hold the

10 entire day, but no one answered the phone.

11     47.  On June 9, 2020, Jessie Verdun called and again waited on hold for

12 hours, but no one answered the phone. While waiting on hold, Jessie Verdun also

13 called the Ventura Police Department and filed an identity theft police report.

14     48.  On August 24, 2020, Jessie Verdun was able to get a copy of the police

15 report (which was delayed due to COVID-19) and sent the report along with a

16 completed FTC fraud affidavit to Bank of America.

17     49.  On September 22, 2020, after receiving no response from Bank of

18 America, Jessie Verdun mailed the documents to Bank of America a second time,

19 via certified mail, and further wrote that he had not heard any results from Bank of

20 America regarding his request for an investigation to his claim of identity theft.

21     50.  Bank of America has not responded to either of the two letters seeking

22 information about the status of his fraud investigation, and has not otherwise

23 contacted Mr. Verdun about the fraud or requested any additional information.  And

24 Bank of America has not returned the disputed amount to Mr. Verdun.

25     51.  As a result of Bank of America's unlawful acts and omissions as stated

26 above, Mr. Verdun suffered actual damages as described above.

27 / / /

28 / / /

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

## CLAIMS FOR RELIEF

## FIRST CLAIM – ELECTRONIC FUNDS TRANSFER ACT

52.  Mr. Verdun repeats the foregoing paragraphs as if fully restated herein.

53.  At all material times relevant to this lawsuit, Mr. Verdun's account was an "account" as that term is defined under 15 U.S.C. § 1693a(2).

54.  At all material times relevant to this lawsuit, Mr. Verdun was a "consumer" as that term is defined under 15 U.S.C. §1693a(5).

55.  At all material times relevant to this lawsuit, the $4,100 debit from Mr. Verdun's EDD benefits was an "unauthorized electronic fund transfer" as that term is defined under 15 U.S.C. § 1693a(11) and constituted an "error" as that term is defined under 15 U.S.C. § 1693f(f).

56.  Mr. Verdun properly notified Bank of America of the fraudulent online transactions (or "error") pursuant to 15 U.S.C. § 1693.

57.  Bank of America did not provisionally credit Mr. Verdun's account within ten (10) business days after receiving notice of the unauthorized electronic fund transfer in violation of 15 U.S.C. § 1693f(c).

58.  Bank of America did not make a good faith investigation of the error asserted by Mr. Verdun with respect to the unauthorized electronic fund transfer in violation of 15 U.S.C. § 1693f(a)3.

59.  Bank of America did not have a reasonable basis for believing the unauthorized benefit transfer was not an error in violation of 15 U.S.C. § 1693f(e)(2).

60.  Bank of America violated 15 U.S.C. § 1693 *et seq.*, by failing to deliver or mail to the consumer an explanation of its findings within three business days after the conclusion of its investigation that an error did not occur, and upon request of the consumer, promptly deliver or mail to the consumer reproductions of all documents which the financial institution relied on to conclude that such error did not occur as required by 15 U.S.C. § 1693f(d).

## COMPLAINT FOR DAMAGES

*Verdun v. Bank of America*

61.  As a result of Bank of America's violations, Mr. Verdun is entitled to statutory damages pursuant to 15 U.S.C. § 1693m(a)(2).

62.  As a result of Bank of America's violations, Mr. Verdun suffered actual damages, under 15 U.S.C. § 1693m(a)(1), in the form of out-of-pocket losses, serious and severe physical and emotional injury, and other actual damages as described above.

63.  Bank of America failed to limit the consumer's liability (here, to $50) pursuant to § 1693g(a) and (e), and, Plaintiff is entitled to treble damages for Bank of America's failure to provisionally credit his account pursuant to § 1693f(e).

64.  Bank of America knowingly and willfully concluded that the unauthorized electronic transfer was not an error when such conclusion could not reasonably have been drawn from the evidence available to Bank of America at the time of its investigation, thus in violation of 15 U.S.C. § 1693f(e)(2).  As a result, Bank of America is liable to Mr. Verdun for a trebling of his actual damages. 15 U.S.C. §1693f(e)(2) and 15 U.S.C. §1693m(a)(1).

65.  Bank of America failed to limit the consumer's liability (here, to $50) pursuant to §§ 1693g(a) and (e), and Plaintiff is entitled to treble damages for failing to provisionally credit pursuant to 1693f(e).

## SECOND CLAIM – CALIFORNIA IDENTITY THEFT ACT

### (Cal Civil Code § 1798.92 et. seq)

66.  Mr. Verdun repeats the foregoing paragraphs as if fully restated herein.

67.  Bank of America is a "claimant" within the meaning of Civil Code § 1798.92(a) in that it is a person who purports to have a claim for money or interest in property in connection with a transaction procured by identity theft.

68.  Bank of America was required to limit Plaintiff's liability to $50.  It is that amount in excess of $50 which Bank of America has refused to return, that Bank of America "has or purports to have" a claim or interest in.  The bank possesses money belonging to Plaintiff in violation of the law.

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

69.   Mr. Verdun is a "victim of identity theft" within the meaning of Civil Code § 1798.92(c) in that he is a person who has had his personal identifying information used without authorization by another to obtain credit, goods, services, money, or property which Mr. Verdun did not use or possess, and he has filed a police report in this regard pursuant to Penal Code § 530.5.

70.   Mr. Verdun is a victim of identity theft within the meaning of Penal Code § 530.5, in connection with the fraudulent withdrawals/transactions.

71.   Bank of America's acts and omissions violated Civil Code §§ 1798.92 and 1798.93 including, but not limited to, the sections listed below.

72.   Pursuant to Civil Code § 1798.93(c)(1), Mr. Verdun is entitled to a declaration that he was a victim of identity theft regarding these fraudulent transactions, as discussed above.

73.   Mr. Verdun is entitled to a declaration that any security interest or other interest that Bank of America may have obtained in Mr. Verdun's property is void and unenforceable.

74.   Pursuant to Civil Code § 1798.93(c)(5), Mr. Verdun is entitled to damages, attorney fees, costs, and any equitable relief the court deems appropriate.

75.   Pursuant to Civil Code § 1798.93(c)(6), Mr. Verdun is entitled to a civil penalty of $30,000. Mr. Verdun provided written notice to Bank of America, at least thirty days prior to filing an action, at the address designated by Bank of America for complaints related to credit reporting issues, that a situation of identity theft might exist and explaining the basis for that belief. Bank of America failed to diligently investigate Mr. Verdun's notification of a possible identity theft, and continued to pursue its claims against Mr. Verdun (by refusing to re-credit his account, and maintaining its possessory interest in the funds) after being presented with facts that establish Mr. Verdun was a victim of identity theft.

76.   As a result of Bank of America's violations, Mr. Verdun is entitled to

-12-

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

recover statutory damages, actual damages, reasonable attorney's fees, and costs.

### THIRD CLAIM – CONVERSION

77.   Mr. Verdun repeats the foregoing paragraphs as if fully restated herein.

78.   Bank of America wrongfully exercised control over Mr. Verdun's personal property.

79.   Mr. Verdun had a possessory interest in the disability funds placed in his Bank of America account.

80.   Bank of America intentionally took a possessory interest in such funds, and refused to recredit or release them, depriving Mr. Verdun access to his personal property.

81.   Bank of America intentionally took possession of nearly $4,100 and has possessed Plaintiff's money for almost a year and still refuses to return his money.

82.   Bank of America prevented Mr. Verdun from having access to these funds for nearly a year at the time of the filing.

83.   Bank of America refuses to return the funds despite Mr. Verdun's demands.

84.   Mr. Verdun did not consent to the withdrawal from his account that was not made by him.

85.   Mr. Verdun was harmed as a result, and Bank of America's conduct was a substantial factor in causing Mr. Verdun's harm.  As a result of Bank of America's conversion, Mr. Verdun suffered actual damages, in the form of out-of-pocket losses, serious and severe physical and emotional injury, and other actual damages as described above.

86.   Bank of America acted with oppression and/or malice, thereby entitling Mr. Verdun to punitive damages in an amount to be determined at trial. Bank of America acted in a despicable manner and acted with a conscious disregard to the rights of Mr. Verdun.

-13-

### COMPLAINT FOR DAMAGES

*Verdun v. Bank of America*

THE LAW OFFICES OF:
ANDRE L. VERDUN

THE LAW OFFICES OF:
ANDRE L. VERDUN

## **FOURTH CLAIM – NEGLIGENT TRAINING AND SUPERVISION**

87.   Mr. Verdun incorporates by reference the above paragraphs as though fully stated herein below.

88.   Bank of America negligently trained and supervised its employees and agents as to the performance of their job duties. As a result of such negligent instruction and supervision, the employees/agents, while carrying out their job duties, caused injury and damage to Mr. Verdun.

89.   As a direct and proximate result of Bank of America's unlawful conduct, Mr. Verdun has suffered actual damages as described above.

90.   Bank of America acted with oppression and/or malice, thereby entitling Mr. Verdun to punitive damages in an amount to be determined at trial. Bank of America acted in a despicable manner and acted with a conscious disregard to the rights of Mr. Verdun.

## **FIFTH CLAIM – NEGLIGENCE**

91.   Mr. Verdun incorporates by reference the above paragraphs as though fully stated herein below.

92.   Bank of America's outrageous, abusive and reckless acts as described herein constituted negligence.

93.   Bank of America negligently inflicted emotional distress upon Mr. Verdun.

94.   Bank of America breached a duty imposed and failed to exercise ordinary care.

95.   Bank of America owed Mr. Verdun a duty to refrain from unlawful activities (California Civil Code § 1798.92 et seq., 15 U.S.C. § 1693f, conversion (Penal Code § 507), and to properly investigate and respond to claims of identity theft and unauthorized fraudulent transactions (Civil Code § 1798.92 et seq, 15 U.S.C. §1693(f)), and a duty pursuant to the written agreement between the parties.

-14-

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

96.   The breach of such duty proximately caused injury to Mr. Verdun.

97.   The injury resulted from an occurrence the nature of which these statutes were designed to protect Mr. Verdun from.

98.   Mr. Verdun is a member of the class of persons the statutes were designed to protect.

99.   Bank of America's conduct, as described herein, was wrongful conduct in that Bank of America conducted its business in an abusive, oppressive, and harassing manner.

100. As a direct and proximate result of Bank of America's unlawful conduct, Mr. Verdun has suffered actual damages as described above.

101.  Bank of America's wrongful conduct as described herein actually and proximately caused Mr. Verdun's harm, as noted above.

102. Bank of America acted with oppression, and/or malice, thereby entitling Mr. Verdun to punitive damages in an amount to be determined at trial. Bank of America acted in a despicable manner and acted with a conscious disregard to the rights of Mr. Verdun.

## SIXTH CLAIM – VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT

103. Mr. Verdun incorporates by reference the above paragraphs as though fully stated herein below.

104. The California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.100, et seq., provides consumers with a private right of action against businesses when their personal information is subject to unauthorized access, theft, or disclosure as a result of a business's breach of its duty to take reasonable steps to protect that information.

105. Mr. Verdun is a "consumer" as defined in the CCPA.

106. Bank of America is a "business" as that term is defined in the CCPA and therefore is subject to liability to thereunder.

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

107. Bank of America directly or indirectly collected Mr. Verdun's personal information as defined in Cal. Civ. Code § 1798.81.5(d)(1)(A), including but not limited to Mr. Verdun's name or first initial, last name and account number or credit or debit card numbers, in combination with any required security codes, access codes, or passwords that would permit access to an individual's financial accounts.

108. Mr. Verdun's collective personal information was collected, stored, and/or transmitted by Bank of America in a nonencrypted and nonredacted form, or in some other form that permitted unauthorized individuals to access that information in violation of the CCPA.

109. As a business, Bank of America had a duty under CCPA to implement and maintain reasonable security procedures and practices appropriate to the nature of Mr. Verdun's personal information.

110. Bank of America breached its duty to implement and maintain reasonable security procedures and practices appropriate to the nature of Mr. Verdun's personal information by, among other things, issuing EDD debit cards to Mr. Verdun with magnetic stripes but without EMV chip technology.

111. Upon information and belief, Bank of America further failed to implement and maintain reasonable security measures by transferring information regarding Mr. Verdun's EDD debit card to, and storing it on, unsecured or inadequately secured data storage devices, including at EDD.

112. As a direct and proximate result of Bank of America's failure to implement and maintain reasonable security procedures and practices appropriate to the nature of Mr. Verdun's personal information, Mr. Verdun's suffered unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted personal information. Mr. Verdun's never authorized such disclosure of their personal information.

113. Bank of America knew or should have known that issuing EDD debit cards with magnetic stripes but without EMV chip technology was not a reasonable

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

security procedure or practice appropriate to the nature of Mr. Verdun's personal information and that a data breach resulting in the unauthorized access and exfiltration, theft, or disclosure of Mr. Verdun's personal information was highly foreseeable.

114. As a direct and proximate result of the unauthorized access and exfiltration, theft, or disclosure of their nonencrypted and nonredacted personal information, Mr. Verdun was injured and lost and/or continue to lose money or property, including but not limited to the monetary value of unauthorized transactions on the EDD debit cards issued by Defendant, the loss of Mr. Verdun's protected privacy interests in the confidentiality and privacy of his personal information, nominal damages, and additional losses as described above.

115. Mr. Verdun seeks relief under Cal. Civ. Code § 1798.150(a), including but not limited to recovery of actual damages as stated above, statutory damages, private and public injunctive relief, declaratory relief, his costs of suit, attorney's fees pursuant to Cal. Code Civ. Proc. § 1021.5 or other appliable law, and any other relief the court deems proper.

## SIXTH CLAIM – VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW (Bus. & Prof. code § 17200)

116. Mr. Verdun repeats the foregoing paragraphs as if fully reinstated herein.

117. California's Unfair Competition Law ("UCL") prohibits any "unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof Code § 17200, et seq.

118. Bank of America's unlawful business acts and/or practices as alleged herein have violated numerous laws and/or regulations and said predicate acts are therefore per se violations of Bus. and Prof. Code § 17200 et seq.  Business and Professions Code §§ 17200-17205 prohibits business acts and practices that are unlawful, unfair and deceptive.

-17-

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

THE LAW OFFICES OF:
ANDRE L. VERDUN

119. As alleged herein, Bank of America expressly represented to Plaintiff and all other EDD benefit recipients, among other things, that EDD cardholders would have "Zero Liability" for unauthorized transactions, and that customer service representatives would be available 24 hours a day, 7 days a week, to address Plaintiff's and all other EDD benefit recipients' issues regarding unauthorized transactions.

120. Bank of America's "unfair" acts and business practices include, among other things: (a) failing to store and transmit private information belonging to EDD benefit recipients in a safe and secure manner; (b) representing to the EDD, while engaging in contract negotiations to secure the exclusive contract to provide benefits to EDD benefit recipients, that benefits would be provided to EDD benefit recipients using Bank of America debit cards and card services that would be subject to the highest standards in fraud monitoring, and then failing to equip its EDD debit cards with EMV microchip technology even though Bank of America knew and stated publicly that EMV microchips were the best available anti-fraud technology; (c) representing to EDD benefit recipients assistance is available "24/7" and despite representing that "Telephoning is the best way of keeping your possible losses down" failing to provide reasonable or adequate telephone assistance to Plaintiff and other California EDD benefit recipients; (d) failing to investigate and resolve Plaintiff's claims of unauthorized transactions in a timely manner, as well as claims made by countless other EDD benefit recipients, despite its "Zero Liability" policy for unauthorized transactions; and (e) failing to extend provisional credit to Plaintiff in cases where it is unable to timely investigate and resolve fraud claims. Bank of America's acts, omissions, and conduct are "unfair" under the UCL because those acts, omissions, and conduct, as alleged herein, violated public policy and constitute false, unethical, oppressive, and unscrupulous activities that caused substantial injury to EDD benefit recipients, including to Plaintiff.

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

121. Bank of America has engaged in "unlawful" acts and business practices by violating multiple laws, including the California Consumer Privacy Act, as alleged herein; Regulation E of the federal Electronic Funds Transfer Act ("Regulation E"), which requires Bank of America to limit EDD cardholders' liability for unauthorized transactions and to extend provisional credit to EDD cardholders in cases where a fraud claim is not resolved within ten business days; and California statutory and common law, as alleged herein.

122. Bank of America has engaged in "fraudulent" acts and business practices because its false representations to EDD cardholders that they would have "Zero Liability" for unauthorized transactions and that customer service representatives would be available 24 hours a day, 7 days a week were likely to deceive, and did deceive, Plaintiff and other EDD benefit recipients into using Bank of America's EDD debit card services to receive EDD benefits (instead of, for example, opting to receive EDD benefits via paper check) and into using Bank of America's EDD debit card services with substantially less vigilance than they otherwise would have, had they known about Defendant's fraudulent acts and business practices and false representations, as alleged herein.

123. As a result of Bank of America's violations of the UCL, Plaintiff is entitled to private and public injunctive relief: (a) prohibiting Bank of America from continuing its unfair, unlawful, and deceptive business practices, and (b) requiring Bank of America to take reasonable measures to prevent future unauthorized use of EDD debit cards and accounts and to ensure timely and adequate processing of EDD cardholders' claims regarding unauthorized or fraudulent use of their EDD debit cards or accounts.

124. As a result of Bank of America's violations of the UCL, Mr. Verdun has suffered injury in fact and lost money or property, including but not limited to the funds lost to fraud that have not been reimbursed, fees paid to Bank of America, and lost interest that would have accrued on funds during the period of time when

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*

the funds were unavailable due to Bank of America's failure to timely and adequately investigate claims of unauthorized transactions and other violations of the UCL.  Plaintiff is entitled to restitution.

## **PRAYER FOR RELIEF**

125. WHEREFORE, Mr. Verdun, respectfully prays that judgment be entered against Defendants for the following:

      a. Actual, statutory, and punitive damages, reasonable attorney's fees and costs;

      b. Statutory damages pursuant to 15 U.S.C. § 1693m(a)(2), Cal. Civ. Code § 1798.93(c)(6), and Cal. Civ. Code § 1798.150(a);

      c. Actual damages available under common law and pursuant to 15 U.S.C. § 1693m(a)(1), Cal. Civ. Code § 1798.93(c), and Cal. Bus. & Prof. Code § 17200;

      d. Treble damages of Mr. Verdun's actual damages, pursuant to 15 U.S.C. §§ 1693f(e) & 1693m(a)(1);

      e. Declaratory and private and public injunctive relief pursuant to Cal. Civ. Code § 1798.93, Cal. Civ. Code § 1798.150(a)(1)(B), and Cal. Bus. & Prof. Code § 17200;

      f. Costs and reasonable attorney's fees pursuant to 15 U.S.C. §1693m(a)(3) and Cal. Civil Code §1798.93;

      g. All other relief this Court deems just and proper.

Dated: **May 28, 2021**

                     /s Andre L. Verdun
                     Andre Verdun,
                     Attorneys for Plaintiff

## COMPLAINT FOR DAMAGES

*Verdun v. Bank of America*

## **DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff, Mr. Verdun demands trial by jury in this action.

Dated: **May 28, 2021**

                        /s Andre L. Verdun
                        Andre Verdun,
                        Attorneys for Plaintiff

**COMPLAINT FOR DAMAGES**

*Verdun v. Bank of America*